UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANDREW COLE,

      Plaintiff,

      v.

JPMORGAN CHASE BANK, N.A.,

      Defendant.

Case No. 2:15-cv-2634
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (ECF No. 15), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, Defendant's Motion to Dismiss is **GRANTED in Part and DENIED in Part**.

## I.      BACKGROUND

Plaintiff Andrew Cole, ("Plaintiff") filed his First Amended Complaint (ECF No. 11) (the "Complaint") on September 25, 2015, against Defendant JPMorgan Chase, N.A. ("Defendant" or "Chase"). The Complaint lists three counts: Count One, violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605(e) and 2605(k); Count Two, violations of §§ 38-40-103 and 38-40-104 of the Colorado Revised Statutes ("C.R.S."); and Count Three, Intentional Infliction of Emotional Distress. (*Id.*, at 10-25.)

In the Complaint, Plaintiff alleges that he is a resident of the State of Colorado, and that Defendant is a national bank organized under the National Bank Act, with an office and a principal place of business in Ohio. (Compl., ECF No. 11, at 1.) Plaintiff further alleges that Defendant is a mortgage servicer as defined by 12 U.S.C. § 2605. (*Id.*) Plaintiff alleges that the Complaint arises under RESPA, 12 U.S.C. § 2605(e) and (f), and thus the Court has federal

question jurisdiction, and alternatively diversity of citizenship as provided by 28 U.S.C. § 1332. (*Id.*)  Defendant moves this Court to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (ECF No. 15.)  Additionally, Defendant moves this Court to transfer this action to the federal district court in Colorado, pursuant to 28 U.S.C. § 1404(a).  (ECF No. 14, at 3.)

## II.    MOTION TO DISMISS

Defendant claims that Plaintiff lacks standing to maintain these claims, because "nearly identical" claims were dismissed in a prior action brought in the United States District Court for the District of Colorado.  Defendant asserts that "Plaintiff is barred by collateral estoppel from re-litigating this issue here and his claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  Further, Defendant claims that each of Plaintiff's claims fails as a matter of law and should be dismissed under Fed. R. Civ. P. 12(b)(6)."  (ECF No. 15.)

**A.  Standard**

**1. Federal Rule of Civil Procedure 12(b)(1):**

A Rule 12(b)(1) motion contends that this Court has a "lack of subject matter jurisdiction" over claims asserted in the Complaint.  Fed. R. Civ. P. 12(b)(1).  Generally, Rule 12(b)(1) motions fall into  two general categories: facial attacks and factual attacks. A *facial* attack is a challenge to the sufficiency of the pleading itself.  On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 235–37 (1974). In contrast, a *factual* attack is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, *see Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325

(6th Cir.1990), and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Additionally, under the doctrine of collateral estoppel, courts may bar litigants from reasserting the same claim in a subsequent suit. *See Hooker v. Federal Election Com'n*, 21 F.App'x 402, 405 (6th Cir. 2001). Before applying collateral estoppel (*i.e.*, issue preclusion), four factors must be present:

> (1) The precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
> (2) Determination of the issue must have been necessary to the outcome of the prior proceeding;
> (3) The prior proceeding must have resulted in a final decision on the merits; and
> (4) The party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*See N.L.R.B. v. Kentucky May Coal Co., Inc.*, 89 F.3d 1235, 1239 (6th Cir.1996).

Defendant argues that Plaintiff lacks standing to litigate this case because "Plaintiff's claims are predicated on alleged actions and omissions by Chase that occurred before or during a Chapter 13 bankruptcy case that Plaintiff filed in the United States Bankruptcy Court for the District of Colorado." (ECF No. 15, at 1.) The Bankruptcy case was dismissed on July 11, 2012. (ECF No. 15, Exh. G.) While the Bankruptcy was pending, Plaintiff filed suit in the United States District Court for the District of Colorado. (ECF No. 15, Exh. H.) The District Court in Colorado ruled that "Mr. Cole filed this case after he filed his bankruptcy petition. In these circumstances, Mr. Cole is not the real party in interest. Rather, the claims he asserts belong to the bankruptcy estate. Because Mr. Cole lacks standing to assert his claims, his claims must be dismissed." (ECF No. 15, Exh. I, at 2.) Furthermore, Defendant argues that Plaintiff is barred from re-litigating his lack of standing, which the Colorado federal court already adjudicated, under the doctrine of collateral estoppel. (ECF No. 15, at 12.)

Plaintiff agrees that the District Court in Colorado correctly dismissed the 2011 suit, on the grounds that the claims belonged to the bankruptcy trustee.  However, Plaintiff asserts that the District Court in Colorado did not reach the merits of any issue, and dismissed the suit without prejudice.  (ECF No. 19, at 4.)  Additionally, Plaintiff asserts that "in January 2014, more than 2 ½ years after his bankruptcy was filed and about 1 ½ years after his bankruptcy was dismissed, the new RESPA regulations became effective."  "[I]n March of 2014, Plaintiff sent the information requests and requests for correction that are the subject of this case."  (ECF No. 19, at 4.)

This Court concurs that all claims based on conduct alleged to have occurred prior to July 11, 2012 cannot be asserted by the Plaintiff.  Any claim that could have, or should have been, brought before or during the bankruptcy cannot be asserted by the Plaintiff.  The Complaint makes repeated reference to events occurring prior to July 11, 2012.  Therefore, Defendant's Motion to Dismiss is **GRANTED in Part** as to conduct alleged to have occurred prior to July 11, 2012.

**2.  Federal Rule of Civil Procedure 12(b)(6):**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (clarifying the plausibility standard articulated in *Twombly*).  "A claim has facial plausibility when the plaintiff pleas factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The factual allegations of a pleading "must be enough to raise a right to relief above the

4

speculative level . . . ."  *Twombly*, 550 U.S. at 555.  "All of the well-pleaded allegations of the complaint must be treated as true, though we need not accept Plaintiff's legal conclusions or draw unwarranted factual inferences."  *Thomas v. Publishers Clearing House, Inc.*, 29 F.App'x 319, 322 (6th Cir. 2002).

Plaintiff's Complaint alleges that this action arises under RESPA and the common law as a result of "Plaintiff's emotional and gut wrenching efforts to obtain straight answers from Chase, a mortgage servicer entrusted with the USDA loss mitigation program, regarding his multiple year effort to save his family home from foreclosure. . . ."  (Compl., ECF No. 11, at 2.) Plaintiff owns a principal residence located in Grand Junction, Colorado, and Chase has been the servicer of this mortgage since May, 2011.  (*Id.*)

Before summarizing the RESPA allegations in the Complaint, the Court notes that the facts asserted include matters occurring before and after July 11, 2012.   Plaintiff asserts that his home "has always been an ideal candidate for a loss mitigation arrangement as required by USDA regulations."  (Compl., ECF No. 11, at 3.)  The deed of trust, Paragraph 16, states that it will be governed by federal law and the law of the jurisdiction in which the property is located. (*Id.*)  Plaintiff asserts that 42 U.S.C. § 1472(h)(13) is a federal law, and as such, required the Defendant to engage in loss mitigation:

> "(13) **Loss mitigation**
> Upon default or imminent default of any mortgage guaranteed under this subsection, mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure (including actions such as special forbearance, loan modification, pre-foreclosure sale, deed in lieu of foreclosure, as required, support for borrower housing counseling, subordinate lien resolution, and borrower relocation), as provided for by the Secretary."

(Compl., ECF No. 11, at 3-4.)

Plaintiff alleges that "Defendant was deliberately not complying with loss mitigation but repeatedly claimed the borrower's submissions were somehow incomplete to the point of absurdity." (*Id.*, at 4.) Plaintiff alleges that he "executed and submitted to Defendant or its predecessor, Chase Home Finance, LLC, at least eleven (11) loss mitigation packets complete and after all or most, countless supplements requested by Chase on many more occasions. All or most of the initial and supplemented packets were prepared by a licensed mortgage professional at counsel's direction, and all or most were exemplary, or at minimum, substantially complete." (*Id.*, at 4.) Plaintiff alleges that "Chase continually, despite supplementation, never considered his applications in good faith but gave excuses that tried to blame Plaintiff to the point of absolute absurdity." As examples, Plaintiff alleges that in

> "one instance Defendant denied the application for a reason that was blank on the letter. . . . In one instance Chase claimed it could not read a pay stub that was clearly visible. In another, plaintiff was advised that his packet would not be considered because not [*sic*] submitted a certain, but not communicated, number of days before a foreclosure sale. When Plaintiff called the Chase representative's attention to the fact that it had been submitted within the claimed required period, the representative changed her story to claim untimeliness under the same number of business days. This went on for years making it apparent that Chase was acting in bad faith, putting on a show for USDA, had no intent of ever engaging in loss mitigation, was pretending to comply, and that further submissions were a complete waste of time meant only to paper its files for USDA."

(*Id.*, at 5.)

Plaintiff alleges that "Chase engaged in falsely claiming packets were incomplete on a nationwide basis." (*Id.*) Furthermore, Plaintiff alleges that "[o]n March 14, 2012, Defendant was placed on robust notice by way of a lawsuit filed in the United States District Court for the District of Columbia, in Case No. 1:12-cv-00361-RMC (hereinafter "District of Columbia case") by the United States and 49 states, including Ohio and Colorado of problems with avoiding loss mitigation." (Compl., ECF No. 11, at 6.) Plaintiff provides examples from the allegations in

that lawsuit to show that Chase was alleged to, among other things, fail to "properly process borrowers' applications for loan modifications, including failing to account for documents submitted by borrowers and failing to respond to borrowers' reasonable requests for information and assistance. (¶ 58r)." (*Id.*, at 8.)[1]

Plaintiff alleges that "he sent a letter to Chase Home Finance, LLC, dated February 5, 2011, that was received on March 8, 2011, asking specific questions regarding his loss mitigation efforts" and Chase "totally failed to answer that letter." (Compl., ECF No. 11, at 9.) Then,

> "on June 1, 2011 Plaintiff filed an emergency bankruptcy (*In Re Cole*, 11-23058, D.CO) to stop a threatened non-judicial foreclosure sale that week. Plaintiff, on June 4, 2012, sued Defendant in *Cole v. JPMorgan Chase Bank, N.A.* in Case No. 1:12-cv-1452 REB KLM (D. CO) (hereinafter the "Colorado case") over actions that had occurred prior thereto including its failure to answer his letter. The case was dismissed without prejudice on standing issues in that Plaintiff's bankruptcy trustee owned the then existing claims."

(*Id.*)

In Count One, Plaintiff's RESPA claim, he alleges that "after enduring almost another three years of claims that his continuing packet submissions were somehow incomplete, 12 U.S.C. § 2605(k) and its regulatory framework became effective. This statute and its regulations made it clear that servicers such as Chase, must respond to QWRs about loss mitigation."[2] (Compl., ECF No. 11, at 10.)

---

[1] *See* www.nationalmortgagesettlement.com. The case, brought by the United States and 49 State Attorneys General (excluding Oklahoma), provided a "historic joint state-federal settlement with the country's five largest mortgage servicers", including JPMorgan Chase. The settlement in February 2012 does not preclude private claims by individuals.

[2] 12 U.S.C. § 2605(k) provides:

> (k) **Servicer Prohibitions**
> (1) **In General** A servicer of a federally related mortgage shall not—
> . . . .(C) fail to take timely action to respond to a borrower's request to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties;

In 2014, Plaintiff sent an "almost identical [to the February 5, 2011 letter] but updated letter again asking specific, targeted questions" to Chase, which Chase received in Columbus, Ohio at "Attn: Customer Service Research Mail Code:  OH4-7402, P.O. Box 24696, Columbus, OH 43224-0696 an address maintained by Chase on an internet website after the regulations to 12 USC 2605k became effective."  "Chase failed to send any meaningful or plausibly compliant response, only directing Plaintiffs to its counsel in Denver."  (Compl., ECF No. 11, at 10.)

"Thereafter, Plaintiff again searched the internet for a Chase QWR address, and found a specific QWR address on another website maintained by Chase (but not on the initial site) at 'PO Box 183166, Columbus OH 43218-3166.'"  "He sent basically the same letter that was received by Chase at this address."  "Both 2014 letters repeated much of the information in the 2011 letter and asked many of the same questions but brought current to 2014."  (Compl., ECF No. 11, at 10-11.)

The Complaint conflates events occurring before and after the critical date of July 11, 2012.  Given the inability to distinguish the operative dates, the Court could dismiss the Complaint, given this ambiguity.  The Federal Rules of Civil Procedure instruct district courts to "freely" grant parties leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2), *see* *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014).  Inasmuch as Plaintiff alleges that this suit "involves RESPA inquiry letters sent in 2014," pursuant to changes to the law and regulations adding provisions that were not in effect at the time of the earlier suit, the Court cannot conclude that the amendment of the Complaint would be futile.  *Williams*, at 949 ("When a district court denies a motion to amend because it concludes that the amendment would be futile, the basis for its denial of the motion is its purely legal conclusion that the proposed

---

. . . .(E) fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.

amendment 'could not withstand a Rule 12(b)(6) motion to dismiss.'" *Riverview Health Inst. LLC v. Med. Mut. of Ohio,* 601 F.3d 505, 512 (6th Cir. 2010) (citation omitted); *see Wade v. Knoxville Utils. Bd.,* 259 F.3d 452, 459 (6th Cir. 2001)).

Accordingly, Defendant's Motion to Dismiss is **GRANTED in Part** as to Count One, insofar as it addresses conduct that occurred prior to July 11, 2012. Plaintiff will be granted **fourteen (14)** days to amend his Complaint consistent with this opinion. Failure to do so will result in dismissal under Rule 12(b)(6).

### ii. Count Two: C.R.S. §§ 38-40-103 and 38-40-104

In Count Two, Plaintiff alleges that Defendant's responses to the 2014 Letters constituted a violation of Colorado Revised Statutes § 38-40-103 and § 38-40-104. (Compl., ECF No. 11, at 18-19.) This statute states in relevant part: "The servicer of a loan shall respond in writing within twenty days from the receipt of a written request from the debtor ... for information concerning the debtor's loan, which is readily available to the servicer from its books and records and which would not constitute the rendering of legal advice." Colo.Rev.Stat. § 38–40–103(2). It provides a cause of action for those who can show "actual damages have occurred" as a result of the violation. Colo.Rev.Stat. § 38–40–104(1).

In support of his contention, Plaintiff cites *Christenson v. Citimortgage, Inc.*, No. 12-cv-02600-CMA-KLM, 2014 WL 4637119 (D. Colo. Sept. 16, 2014). (ECF No. 19, at 14.) Defendant argues that that case is inapposite. Defendant argues that "*Christenson* addressed a letter the plaintiffs sent to which the lender did *not* respond. *Id.* at *1." (ECF No. 23, at 13.) Additionally, Defendant argues that "in order to claim a violation of Section 38-40-103, a borrower must first 'make a good faith effort to resolve the dispute[.]' C.R.S. § 38-40-104(1)." (ECF No. 23, at 13.) Section 38-40-104(1) states:

**38-40-104. Cause of action - attorney fees.** (1) If any applicant or debtor is aggrieved by a violation of section 38-40-102, 38-40-103, or 38-40-103.5 and the violation is not remedied in a reasonable, timely, and good faith manner by the party obligated to do so, and after a good faith effort to resolve the dispute is made by the debtor or borrower, the debtor or borrower may bring an action in a court of competent jurisdiction for any such violation. If the court finds that actual damages have occurred, the court shall award to the debtor or borrower, in addition to actual damages, the amount of one thousand dollars, together with costs and reasonable attorney fees.

Defendant argues that "Plaintiff's amended Complaint contains no factual allegations whatsoever stating that, after he received Chase's Response to his Letter, he attempted to resolve this matter before commencing this action.  Instead, he simply filed this case against Chase.  For these reasons, *Christenson* is distinguishable and Plaintiff's claim under the Colorado Statutes fails as a matter of law."  (ECF No. 23, at 14.)    The Court concurs that, as a matter of law, Plaintiff has not pled sufficient facts to support Count Two.   Chase's Motion to Dismiss Count Two pursuant to Rule 12(b)(6) is, therefore, **GRANTED.**

### iii.  Count Three: Intentional Infliction of Emotional Distress

The parties concur that Colorado law governs this claim.  (ECF No. 19, at 15; ECF No. 23, at 16.)  Defendant asserts that Plaintiff's claim must fail as a matter of law.  (ECF No. 23, at 14.)  A claim for intentional infliction of emotional distress under Colorado law requires proof that:

> "(1) the defendant(s) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) caus[ed] the plaintiff severe emotional distress." *Archer v. Farmer Bros. Co.,* 70 P.3d 495, 499 (Colo.App.2002), *aff'd,* 90 P.3d 228 (Colo.2004).

*Mackall v. JPMorgan Chase Bank, N.A.*, No. 12CA1427, 2014 WL 4459624, at *8 (Colo. App. Sept. 11, 2014).  Additionally, "outrageous conduct" has been deemed to consist of conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *See*

*Culpepper v. Pearl St. Bldg., Inc.,* 877 P.2d 877, 882 (Colo. 1994); *Ramsey v. Citibank, N.A.*, No. 10-cv-02653-WYD-CBS, 2011 WL 4485918, at *5 (D. Colo. Sept. 28, 2011 ("the level of outrageousness required for conduct to create liability for intentional infliction of emotional distress is extremely high"); *Dawson v. Litton Loan Servicing, LP*, No. 12-cv-01334-CMA-KMT, 2013 WL 1283848, at *9-10 (D. Colo. March 28, 2013) (conduct consisting of allegations that bank accepted loan payments and then reneged on its promise not to foreclose, and instead commenced foreclosure proceedings the next day "does not rise to the level of conduct which may be characterized as 'atrocious and utterly intolerable in a civilized community'") (citations omitted).

"Although the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question." *Culpepper,* 877 P.2d at 883:

> A person acts with intent to cause severe emotional distress when he engages in conduct with the purpose of causing severe emotional distress to another person, or he knows that his conduct is certain or substantially certain to have that result. A person acts recklessly in causing severe emotional distress in another if, at the time of the conduct, he knew or reasonably should have known that there was a substantial probability that his conduct would cause severe emotional distress to the other person.

*Id.,* at 882–83.

Plaintiff alleges that "[b]y virtue of Defendant's position as a mortgage servicer of a USDA and administrating the USDA loss mitigation program, Defendant placed itself in a position of actual authority over plaintiff and give [*sic*] Defendant power to affect whether Plaintiff and his children keep their family home under USDA regulations intended to accomplish that purpose."   (Compl., ECF No. 11, at 19-20.)   Plaintiff then reiterates the frustration he alleges he experienced throughout his numerous attempts to obtain information from Chase to assist him in receiving consideration for loss mitigation; the emotional pressure he

11

experienced from the proposed foreclosure and bankruptcy; and alleges that he suffered "severe emotional distress from Chase's arrogant, evasive and insulting answer to his letters in that sent a clear message that Defendant considered itself above the law and had no intention of answering or even acknowledging its conduct even when required to do so by law." (Compl., ECF No. 11, at 23-24.)    Taken as true, under Colorado law, the conduct described in the Complaint does not plausibly rise to the level of "atrocious and utterly intolerable in a civilized community" conduct actionable under Colorado law for this tort.  Chase's Motion to Dismiss Count Three pursuant to Rule 12(b)(6) is, therefore, **GRANTED**.

### III.

For the reasons set forth above, Chase's Motion to Dismiss (ECF No. 15) is **GRANTED in Part** as to Count One, and **GRANTED** as to Counts Two and Three.    Plaintiff is granted **fourteen (14)** days to amend Count One of his Complaint.

**IT IS SO ORDERED.**

1-25-2016
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**