UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW COLE, | : | CASE NO. 2:15-cv-02634 EAS-EPD |
| Plaintiff, | : | |
| vs. | : | Judge: Edmund A. Sargus |
| | : | Magistrate: Elizabeth Preston Deavers |
| JPMORGAN CHASE BANK, N.A., | : | |
| | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS (Doc. 31)

### Introduction

Defendant has filed a second motion to dismiss. The initial issue raised by the Complaint is the claim over Chase maintaining a website in *direct* violation of 12 CFR 1024.35c. Defendant, however, leads its memorandum with another issue first, likely to avoid drawing immediate attention to this clear violation. While Plaintiff ordinarily would address the issues in the order Defendant raises them, he wants the Court to see from the beginning Chase's total lack of respect for RESPA and the regulations by maintaining the offending website, and thus begins with that issue.

Aside from the website issue, Defendant's motion raises an apparently serious issue over whether Chase was required to respond to Plaintiff's letters at all sent under RESPA because they relate to loss mitigation in light of the recent opinion in *Smallwood v. Bank of America,* N.A. No. 1:15-cv-336 (S.D. Ohio, Dec. 1,

1

2015). While *Smallwood* appears at first blush to be on point, it solely decides a servicer's obligations under 12 U.S.C. § 2605(e). It does not address 12 U.S.C. § 2605**(k)** *which is the section enacted by Congress to deal with the previous limitations of Section 2605 including subsection e.* 12 U.S.C. § 2605**(k) is never referenced in Smallwood.** Even as to subsection e, the Court decided the case with inadequate briefing dealing with what the Court calls "prevailing" authority, decided before the various state and federal authorities discovered the high level of bank misconduct involving loss mitigation. *Smallwood* was appealed to the Sixth Circuit and ultimately settled. Plaintiff will initially address 2605e because it is a prelude to the briefing on subsection k and why it was necessary. Plaintiff will spend the bulk of the response illuminating the misconceptions of *Smallwood* and how it is distinguishable on the law.

The confusion in *Smallwood* likely comes from the use and misunderstanding of the term "QWR." The *Smallwood* Court clearly considered QWR to refer only to a letter sent under the "qualified written request" section of 12 U.S.C. § 2605e. Here, the term also refers to the several types of letters sent under subsection 2605k and the incorporated regulations. The opinion is not surprising because the Plaintiff in *Smallwood,* while alluding to the CFPB servicing regulations, failed in any respect to provide the Court with a means to view that the Defendant's conduct was *actionable* under 2605***k*** which was enacted as part of Dodd Frank to address several loopholes in RESPA.

2

Finally, Defendant makes some arguments about causation and damages and opines that its failure to answer its 2014 letter somehow is barred by collateral estoppel. The damages are simple; Plaintiff is a single father and believed Chase was gaming the loss mitigation process so it could foreclose. He sent the 2014 letter looking for straight answers and received more of the runaround. This would make any person suffer severe emotional distress.  Both of those arguments are frivolous and will be dealt with herein as necessary.

## I.     Defendant's Illegal Website

The Dodd Frank amendments to RESPA include 12 U.S.C. § 2605k which states, in part:

> "**(k)SERVICER PROHIBITIONS**
> **(1)IN GENERAL** A servicer of a federally related mortgage shall not—
> ...
> **(E)** fail to comply with *any other obligation found by the Bureau of Consumer Financial Protection, by regulation*, to be appropriate to carry out the consumer protection purposes of this chapter." (emphasis added).

Those regulations are contained in 12 CFR § 1024.30 *et. seq.*  12 CFR 1024.35c quite pointedly and simply states: "A servicer that designates an address for receipt of notices of error *must post the designated address on **any** Web site maintained by the servicer* if the Web site lists *any* contact address for the servicer."(emphasis added). This is unequivocal. It does not say that it must post the address on **a** website so consumers can have access or that it need not post it on **any** Web site maintained by the servicer as long as it gives the correct address to the customer in writing or as part of a contract. It says plainly that the address shall be on "***any** Web site*." 12 U.S.C. § 2605f again quite plainly states:

3

> **"(f) DAMAGES AND COSTS** Whoever fails to comply with ***any provision of this section*** shall be liable to the borrower for each such failure in the following amounts:
> **(1) INDIVIDUALS** In the case of any action by an individual, an amount equal to the sum of—
> **(A)** any actual damages to the borrower as a result of the failure; and
> **(B)** any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000."

As such Plaintiff clearly states a claim.

Defendant makes two incredible arguments. First it argues it somehow escapes liability because it complied with another part of the regulation requiring it to notify the Plaintiff by letter. Then it argues that because it put the correct address on another website that is somehow not liable. This conflicts with the abundantly plain language of the statute and regulation. Aside from that plain language the history of the regulation demonstrates just how frivolous Defendant's argument really is.

Prior to this regulation becoming effective in January of 2014, the enabling RESPA regulations were promulgated by HUD. In accord, courts granting deference to the HUD regulations found that letters sent to other than the designated address were not QWRs and there was no duty to respond. Servicer attorneys began moving successfully to dismiss QWR cases on a "wrong address" argument. *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141 (10th Cir., 2013), *Roth v. CitiMortgage Inc.*, 756 F.3d 178 (2nd Cir., 2014). This provided what has really been a servicer loophole. Chase is no stranger to this loophole. *Lupo v. JPMorgan Chase Bank, NA*, Case No. 14-0475-DKC, (D. Md., Sept. 28, 2015)3 and *Mazed v.*

4

*JPMorgan Chase Bank, NA,* Case No 11-814-JLS (CD Ca., April 7, 2014).   Likely realizing that in everyday life consumers were not digging through the fine print of their mortgage documents but looking to the internet, the CFPB, upon taking over RESPA enforcement, promulgated 12 CFR 1024.35c. In addition to going against the plain language of the statute and regulation, Chase's strange interpretation invalidates the purpose of the rule allowing servicers to trap consumers by putting one address in the fine print of the loan documents then posting another address on a website. The effect is a self-help repeal of RESPA.

Defendant's argument demonstrates something far more important. It evidences an unbelievable level of arrogance on the part of Chase. It is incredible that Chase thinks it can make an argument that contradicts the plain language and purpose of a liberally construed consumer protection statute and its regulations and win. It is clearly against the law to maintain this website, but Chase still maintains it. To Plaintiff it appears that Chase thinks it can break the law and expect a court to accept any sort of loophole its imaginative attorneys can create.

### Letters about loss Mitigation Really are QWRs Under 2605e

The Defendant does not obtain a dismissal if the letter here is not a QWR under 12 U.S.C. § 2605e because Defendant is liable under 12 U.S.C. § 2605k. Nonetheless, an understanding the *full* history of the case law under 2605e is beneficial in understanding why Congress enacted 2605k and the CFPB promulgated its regulations. Moreover, a close examination of the theory that QWRs cannot be about loss mitigation exposes that the theory is a poorly reasoned

5

loophole hatched by the servicing industry to avoid answering a lot of embarrassing borrower questions.

In *Smallwood* the Court stated at 10:

> "Pursuant to 12 U.S.C. § 2605(e), "Duty of loan servicer to respond to borrower inquiries," any loan servicer of a federally related mortgage loan who receives a qualified written response from a borrower "for information relating to the servicing of such loan" must provide a written response acknowledging receipt of the correspondence within five days. 12 U.S.C. § 2605(e)(1)(A). "Servicing" is defined as:
>
>> 'receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.'"

*Smallwood* then noted at 13: "Defendant also relies upon several cases in which district courts have held that a servicer's denial of a permanent loan modification and actions related to loan modification are outside the term 'servicing' and cannot be pursued under RESPA." It then states at 13: "Plaintiffs counter that BOA had a duty to respond to Plaintiffs' QWRs in their entirety, because processing and evaluation loss mitigation applications is directly related to 'servicing' of a loan. ***Plaintiffs do not cite any case law in support of this argument***." (emphasis added).

In *Bourdelais v. JPMorgan Chase Bank, N.A.*, Civil Action No. 3:10CV670 (E.D. Va., 2012), however, the district court denied a motion to dismiss on a QWR over loss mitigation, stating at 17:

> "Finally, her requests that Chase process her HAMP application, correct the inaccurate reporting, and provide further information concerning

6

her account are specific enough at the pleading stage to satisfy the requirement that the QWR contain a statement of the borrower's reasons to believe 'that the account is in error or provide sufficient detail to the servicer regarding other information sought by the borrower.' " *Bourdelais* at 17.

In *Christenson v. Citimortgage,* Case 1:12-cv-02600-CMA-KLM (D. Co., June 17, 2013) the assigned magistrate, presented with all other authority, stated at 12-13:

> "Further, servicing a loan may include the right to 'make decisions concerning acceleration, foreclosure, redemption and deficiencies.' *McVay v. W. Plains Serv. Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987) Here, the Court finds that the majority of Plaintiffs' Letter plainly concerns loss mitigation issues. Defendant cites to several cases from other districts that have held that loss mitigation is unrelated to the servicing of a loan. *See Reply* [#26] at 4-5 (citing to *Yakowicz v. BAC Home Loans Servicing, LP*, No. 12-1180 (DWF/LIB), 2013 WL 593902, at *5 (D. Minn. Feb. 15, 2013); *Beacham v. Bank of America, N.A.*, No. 3:12-CV-00801, 2012 WL 2358299, at *3 (N.D. Tex. May 25, 2012); *Van Egmond v. Wells Fargo Home Mortg.*, No. 12-0112, 2012 WL 1033281, at *4 (C.D. Cal. Mar. 21, 2012); *In re Salvador*, 456 B.R. 610, 623 (M.D. Ga. 2011); *Williams v. Wells Fargo Bank, N.A., Inc.*, No. C 10-00399, 2010 WL 1463521, at *3 (N.D. Cal. Apr. 3, 2010)). However, the Court need not decide whether the law in this district is the same as the persuasive authority offered from these other districts. Plaintiffs' Letter plainly asks for the acceleration to be set aside or cancelled and that Plaintiffs' property be removed from foreclosure. These actions all clearly fall within the Tenth Circuit's definition of servicing a loan, which includes issues in connection with acceleration and foreclosure. *See McVay*, 823 F.2d at 1398."

The recommendation went on to reject dismissal rejecting the same argument asserted here by Chase. The district judge, however, disagreed. *Christenson v. Citimortgage,* Case 1:12-cv-02600-CMA-KLM (D. Co., September 18, 2013) but the authorities are far from unanimous.

Plaintiff acknowledges that the majority of the cases hold that loss mitigation is not related to servicing but the cases seem to follow one another without serious reconsideration or reasoning.  The troubling part is how this majority authority

likely developed. When the recession began, loss mitigation became important considering the many mortgage defaults. Mortgage servicers faced with programs such as USDA loss mitigation in this case, and the HAMP, focused instead on an opportunity.  Articles such as *Why Servicers Foreclose When they Should Modify and Other Puzzling Behavior*, National Consumer Law Center, Inc. (2009) and *Mortgage Servicing*, Letvin, Twomey, 28 Yale Journal on Regulation 1 (Winter 2011) illustrate and expose a very serious conflict of interest between mortgage servicers and the owners and guarantors of the loans who were often the taxpayers, such as in this case (USDA).  The overriding concern is servicer foreclosure related fees, not minimizing USDA's loss.

Early loss mitigation cases wherein borrowers believed themselves wrongfully denied in the 2010 era focused on trying to make the borrower a beneficiary of the agreements between servicers and the trusts that held these loans. They literally tried to force a modification.  From those cases came the servicing industry's mantra which was "there is no private cause of action under HAMP." The problem, however, was that there were other potential private causes of action for tortious conduct in connection with the modification process. It is hard for Chase to run a corrupt system and evade every statutory and common cause of action. The logical one was RESPA as it was the method Congress chose to enact to deal with disputes between servicers and consumers. The servicers' brain trust, however, concocted the argument that loss mitigation letters somehow did not "relate to servicing" because of the RESPA definition of servicing.

8

When the cases began building in favor of this defense, several things existed. The Courts likely viewed mortgage servicers as victims of QWRs aimed at causing trouble.  Many QWRs were rambling requests for every piece of information in the file aimed at harassing the servicer[1]. Moreover, these courts likely viewed the servicing industry as acting the best it could to deal with a serious problem. The "does not relate to servicing" argument must have appeared as a fair method to avoid a flood of bad cases. As time went on, however, it became painfully apparent that the servicers were not dealing in good faith with the problem. 49 states and the United States filed *United States v. Bank of America Corporation*, Case No. 1:12-cv-00361-RMC (D. DC. March 14, 2012) culminating in a historic settlement, including with Chase. With that, the servicing industry's very serious interest in avoiding loss mitigation QWRs became obvious.  Servicers all along have to either admit embarrassing and illegal conduct, needed to do a lot of serious lying, or needed a loophole.  The argument that modification and foreclosure do not "relate to servicing" is absurd, but it has been working and hiding servicers from the remedy Congress intended.

Reasoning on the definitions just in subsection e, the Court should consider the following.  The QWR requirement, like disputes under the Fair Credit Reporting Act, (*see* 15 U.S.C. § 1681i and s-2b) is an important mechanism in federal consumer laws.  Today's situation of mortgage servicers making profits from the abuse of loss mitigation is analogous today to the situation with servicers abusing

---

[1] 12 CFR 1024.36f wisely protects servicers from such harassment, but certainly not from well written, targeted letters like Plaintiff's.

escrow accounts when RESPA was first passed. 12 U.S.C. § 2601.  The preamble to RESPA notes that one of the primary purposes of RESPA as set forth in subsection (b)(3) was to cause  "a reduction in the amounts home buyers are **required to place** in escrow accounts established to insure the payment of real estate taxes and insurance."  (emphasis added).

In RESPA, Congress attempted to define what a servicer *is*, not to *delineate every duty* that goes along with the job. Defendant's argument, when fully analyzed, is really that the RESPA definition of servicing somehow limits the QWR to questions about whether the servicer received and credited the payments the servicer ***claimed*** were due under the loan. This absurd restrictive interpretation of the definition would even disallow as a QWR any letter asking about how escrow requirements were *determined* because such a letter purportedly did not ask directly about "receiving" or "making the payments." No court, however, would rule that setting the amount of escrow payments does not relate to servicing, because the improper determinations of the amount of escrow payments was a main purpose of enacting RESPA to start with; but setting payments under escrows is somehow supposedly different from setting them with loss mitigation.

Other cases justify that loss mitigation does not relate to servicing because loss mitigation somehow deals with a new agreement, not the current loan. This, however, again is a big stretch. Even if correct, however, the USDA regulations in this case required the servicer to adjust the amount it collects when the consumer is unable to make the whole payment to minimize the loss to USDA, often without a

10

new agreement. Sometimes this will be acceleration whereby the full balance is to be collected and paid over, likely by foreclosure. Sometimes it will be by a repayment plan, forbearance or modification. The determination of how much to collect is not any different than managing escrows and requires good faith discretion.

Even giving the servicing industry's argument the benefit of the doubt and assuming that the actual act of adjusting the payment demanded in loss mitigation is not in and of itself technically "servicing," the QWR, under 12 U.S.C. § 2605e(1)(A), must only ask for "information *relating* to the servicing of such loan to servicing" in order to be valid. The position of the Defendant and the servicing industry that any written request from a homeowner concerning the acceleration of the debt and foreclosure for failing to pay amounts the **servicer** chose to demand is not a request for "information *relating* to the servicing of such loan" is preposterous.

The Defendant and other major servicers, however, have a substantial stake in this issue. The recent massive lawsuit by the United States and 49 states demonstrates that mortgage servicers are avoiding loss mitigation. *Bank of America Corporation, supra*. To the servicers, well drafted QWRs about loss mitigation constitute embarrassing questions backed up by a private cause of action for answering them evasively or falsely. To comply with RESPA they would have to comply with their obligations or answer those questions truthfully with inculpatory answers. Instead they invite the federal courts to rewrite RESPA. While the

11

"weight" of authority favors Defendant, it does not mean that it is the correct interpretation. This would not be the first time the weight of authority has proven itself fundamentally wrong. *See, Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, 38 ALR2d 1180 (1954). *Dred Scott, Plaintiff In Error v. John Sandford*, 60 U.S. 393, 19 How. 393, 15 L.Ed. 691 (1856).

It should be noted that Defendant cites the unreported Sixth Circuit case of *Martini v. JPMorgan Chase Bank, N.A.* (6th Cir., 2015). The Court in bold letters at the top of the opinion stated: "**NOT RECOMMENDED FOR FULLTEXT PUBLICATION**" realizing it had not fully analyzed and decided this question. None of the points raised here were considered in that unreported opinion. While the instant case would be a good one for the Sixth Circuit to fully consider this horrible string of authority, because Congress has enacted 12 U.S.C. § 2605k and the CFPB has promulgated appropriate regulations avoid this servicer loophole for letters after January 10, 2014, Plaintiff has an alternative remedy and 2605e will likely not be an issue at the end of the case.

### Plaintiff States a Claim for Violating 12 U.S.C. § 2605k Whether or not the Letters are QWRs under 2605e

*Smallwood* reviewed the CFPB's servicing regulations that became effective in 2014 and reasoned that they did not change the definition of a QWR *under 12 U.S.C. § 2605e*. That is because the briefing did not point to the separate violations under 12 U.S.C. § 2605k. Subsection k was enacted as part of Dodd Frank in response to the mortgage and economic crisis. The purpose was to close loopholes in

12

RESPA, just like the loophole employed by Defendant here. The key portions of subsection k are:

> **"(k)SERVICER PROHIBITIONS**
> **(1)IN GENERAL** A servicer of a federally related mortgage shall not—
> …
> **(C)** fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, ***or avoiding foreclosure, or other standard servicer's duties***;
> …
> **(E)** fail to comply with ***any other obligation found by the Bureau of Consumer Financial Protection, by regulation***, to be appropriate to carry out the consumer protection purposes of this chapter." (emphasis added).

As noted earlier, this subsection, just like subsection e, is enforceable in a private right of action under 12 U.S.C. § 2605f. If anything, Plaintiff's letter was for purposes of "avoiding foreclosure[2]" and also was about "standard servicer duties." Whether or not the letter was a QWR, Chase violated 2605k(C).

Moreover, Chase violated two other regulations of the CFPB (in addition to the offending website) in its failure to answer Plaintiff's first letter and in its evasive response to the second letter. 12 CFR § 1024.35 creates another duty of "Error resolution procedures." Subsection (a) states:

> *"Notice of error.* A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower

---

[2] The very first paragraph states: "The purpose of this letter is to correct my account to **avoid foreclosure**. As you know Colorado is a **non-judicial foreclosure state** in order to encourage lending. As such **review of foreclosures** is limited; that is why your truthful, accurate and complete answers are vital to **contest an improper foreclosure**, as I was not considered properly for a modification on my USDA loan. (emphasis added)." The word "foreclosure" appears 15 times in the letter.

13

believes has occurred."

Subsection b identifies specific errors and states in part:

> "(b) *Scope of error resolution.* For purposes of this section, the term "error" refers to the following categories of covered errors:
> …
> > (7) Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39."

Subsection (e) then states:

> *"Response to notice of error.* (1) *Investigation and response requirements.*
> (i) *In general.* Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:
>
> > (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
> >
> > (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

If the consumer's inquiry does not qualify for any of the other types of mandatory answers the CFPB provided a catchall called an "information request."

12 CFR § 1024.36 states in part:

> **"Requests for information.**
> (a) *Information request.* A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting **with respect to the borrower's mortgage loan.**
> …

14

> (d) *Response to information request.*
> (1) *Investigation and response requirements.* Except as provided in paragraphs (e) and (f) of this section, a servicer must respond to an information request by either:
>
>> (i) Providing the borrower **with the requested information** and contact
>> information, including a telephone number, for further assistance in writing; or
>> (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance." (emphasis added).

As such, assuming that *Smallwood* is correctly decided, Plaintiff's complaint states three separate violations of 12 U.S.C. § 2605k related to his letters in addition to the clearly illegally maintained website.

## Standing

Chase argues that Plaintiff has no standing to sue for Chase's 2014 violations because his previous suit was dismissed. In his response to Defendant's first motion to dismiss, Plaintiff set forth the following by way of footnote to illustrate just how ridiculous this argument really is.

> "The absurdity is evident by way of an illustration. P has a financial dispute with D. In anger D beats P with a baseball bat. P files bankruptcy and fails to schedule his battery claim against D. He sues D and the claim is dismissed for lack of standing. D then comes over and beats P with a baseball bat twice more over the same financial problem. Under Defendant's twisted theory, P has no standing to sue for the post-bankruptcy beatings. Indeed, D has a license to beat P at will so long as it is over the old financial dispute." (Plaintiff's Response to Defendant's First Motion to Dismiss, P.5, n.1)

The previous amended complaint raised a violation that occurred pre-bankruptcy. The last amendments well clarified that this case involved the 2014 violations.

15

Plaintiff was careful and followed the Court order in amending his complaint.

It is true that Plaintiff's emotional distress was increased when Chase violated in 2014 because of all five years of his struggle. But it was almost as serious because of the struggle between July 12, 2012 and the Defendants violations about two years later, and which continue to this day. Defendant will be entitled to a jury instruction excluding damages prior to the date of the violations in 2014. The only relevance of the 2009-2014 evidence is its impact on the damages after 2014. Ultimately this issue should be decided under FRE 403 regarding excluding relevant evidence for prejudicial effect. This is not a topic for a Rule 12b(6) motion. Just as with the website, the puzzling part is that Chase believes it can win this frivolous argument.

## Damages

Defendant claims Plaintiff fails to properly plead causation and damages. *Marais v. Chase Home Fin. LLC*, 736 F.3d 711 (6th Cir., 2013) dealt firmly and directly with the servicer tactic of attacking damages pleading under 12(b)(6). . Marias at 722, citing two of its previous unreported cases, states that those cases' "approach counsels against dismissal of RESPA claims on the basis of inartfully-pleaded actual damages." It also recognizes the authorities holding that emotional distress as recoverable damages as RESPA is a remedial statute.  The damages here, however, are artfully pleaded, continuing for more than two pages, in anticipation of this stock servicer motion. Just a portion of ¶ 18 alleges:

> "Plaintiff suffered severe emotional distress from Chase's arrogant, evasive and insulting answer in that sent a clear message that Defendant

16

>considered itself above the law and had no intention of answering or even acknowledging its conduct, even when required to do so by RESPA" … After receipt of the purported answer, Plaintiff pre-existing anxiety was substantially aggravated because Defendant had "rigged" the loss mitigation process required by USDA, was caught by the government in the national mortgage settlement, but then continued to evade his qualified written requests in its efforts to both continue and conceal its abuse of loss mitigation applicants like Plaintiff. It made Plaintiff experience a total feeling of helplessness to invoke his legal rights just because the tortfeasor was the prominent and a very powerful national bank, Chase.
>
>   Plaintiff experienced anxiety which flares as the exposure to foreclosure process and threatened foreclosure process wears on him, concerned about where he and his kids would sleep or live and all because Defendant would not fulfill its statutory duty to answer questions designed to give Chase a chance to explain how it claims it had not "rigged" the loss mitigation process required by USDA."

That is basically the heart of the case and survives a motion to dismiss. Moreover, to insure that Chase did not walk away from this case entirely he plead in ¶19 "As a direct result of Chase maintaining a website that misdirected Plaintiff, he incurred **mailing costs and attorney time in re-sending his letter to the designated QWR address** from another website maintained by Chase at "PO Box 183166, Columbus OH 43218-3166 (in addition to emotional distress). In essence he suffered this loss *exactly* like the Plaintiff in *Marais v. Chase Home Fin. LLC.,* yet Chase, the actual defendant in *Marais,* still expects this Court to defy the Sixth Circuit and grant its motion to dismiss.

Even worse is Chase's attempt to get the Court to disbelieve Plaintiff's allegation at the 12b(6) stage arguing he was upset about the foreclosure, not the letter. He sent the letter *because* of foreclosure and that is why the evasive answer hurt. This is an equally poor argument for summary judgment. Chase is certainly free to argue to a jury that Mr. Cole is not upset about the letter violations. The

17

problem is that Chase knows it will lose that argument before *most* reasonable juries. The jury will be instructed to award damages caused only by the violations. No reasonable jury will award damages for anything else when properly instructed. Yet Chase well knows that it is likely that Mr. Cole's distress was *directly caused by the violations*, even with just with the background of frustrations developed in the two years before the violations and the damages incurred since. Based on all of the evidence a reasonable jury will clearly see the pain Chase caused with its insulting attempt to evade the difficult questions that were present in this situation and will feel the emotional effect of that on a single father trying to shelter his children.

## Conclusion

The purposes of RESPA "are very similar to those of the Truth in Lending Act," and "[a]s a remedial statute, RESPA is construed broadly to effectuate its purposes." *Marais v. Chase Home Fin. LLC,* 736 F.3d 711, 719 (6th Cir.2013) (citations omitted). Defendant's arguments strain even a strict construction and render RESPA a meaningless paper tiger. The motion should be denied.

/s/ Blair Drazic
Blair K. Drazic, *pro hac vice*
401 Kokopelli Blvd., Unit 1 Ste. 105
Fruita, CO 81521
Phone 970-623-1193
Fax 888-858-0992
E-mail: blairdrazic@gmail.com

And

/s/Steven C. Shane
Steven C. Shane (Ohio 0041124)
P.O. Box 73067
Bellevue, Ky. 41073

                                    (859) 431-7800  
                                    (859) 431-3100 facsimile  
                                    shanelaw@fuse.net  
                                    Trial Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                      /s/Steven C. Shane