UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANDREW COLE,

      Plaintiff,

      v.

JPMORGAN CHASE BANK, N.A.,

      Defendant.

Case No. 2:15-cv-2634
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 31), pursuant to Federal Rules of Civil Procedure 12(b)(6), *with prejudice*, Defendant's Motion to Transfer Venue (ECF No. 14), and Plaintiff's Motions for Leave to file a Surreply. (ECF No. 22, 36.)  For the reasons that follow, Defendant's Motion to Dismiss and Motion to Transfer Venue are **DENIED.**  Plaintiff's motions for leave to file a surreply are **DENIED**.

## I.      BACKGROUND

Plaintiff Andrew Cole ("Plaintiff") filed his Second Amended Complaint (ECF No. 30) ("Complaint") on February 8, 2016, against Defendant JPMorgan Chase, N.A. ("Defendant" or "Chase").  The Complaint asserts a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, *et seq*.  This Court dismissed Plaintiff's prior Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), finding that Plaintiff lacked standing to assert claims that he could or should have brought before or during his prior Chapter 13 bankruptcy case, which was dismissed on July 11, 2012.  (ECF No. 29.)  Plaintiff was permitted to amend his Complaint to address claims that accrued after the July 11, 2012 date.

In this Complaint, Plaintiff alleges that he is a resident of the State of Colorado, and that Defendant is a mortgage servicer as defined by 12 U.S.C. § 2605. (Compl., ECF No. 30, at p. 1, ¶1.) Plaintiff alleges that the Complaint arises under RESPA, 12 U.S.C. § 2605, and thus the Court has federal question jurisdiction. (*Id.*)

**A. Facts**

The well-pleaded allegations of the Complaint are taken as true for purposes of the pending Motion to Dismiss. Plaintiff asserts that he is the owner of a principal residence located in Grand Junction, Colorado, secured by a United States Department of Agriculture ("USDA") loan, and that Chase is and has been the servicer of Plaintiff's mortgage. (*Id.* at p. 2, ¶¶ 2, 4.) The current action stems from Plaintiff's efforts to obtain information "about failed loss mitigation efforts" and his hope that Chase would "acknowledge and/or correct the problems with his applications." (Compl., ECF No. 30, at p. 7, ¶ 13.)

Plaintiff asserts that Paragraph 16 of the deed of trust for his home states, in pertinent part:

> "**Governing Law; Severability; Rules of Construction.** This security instrument shall be governed by federal law and the law of the jurisdiction in which the property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of applicable law. . . ."
>
> "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances, rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."

(*Id.* at pp. 2-3, ¶ 5.)

Plaintiff asserts that the applicable law includes the provisions of 42 U.S.C. § 472(h)(13) addressing loss mitigation for USDA loans:

> "(13) **Loss mitigation.** Upon default or imminent default of any mortgage guaranteed under this subsection, mortgagees *shall engage in loss mitigation* actions for the purpose of providing an alternative to foreclosure (including actions such as special forbearance, loan modification, pre-foreclosure sale, deed in lieu of foreclosure, as required, support for borrower housing counseling,

> subordinate lien resolution, and borrower relocation), as provided for by the
> Secretary." (*Emphasis added*).

(*Id.* at p. 3, ¶ 6.)  Plaintiff asserts that "the purpose of the USDA program was to 'assist eligible

households in obtaining adequate but modest, decent, safe, and sanitary dwellings and related

facilities for their own use in rural areas.'" (*Id.* at p. 4, ¶11.)  In Paragraph 16 of the Complaint,

Plaintiff further asserts that

> While Chase had dismissed its foreclosure proceedings, Plaintiff was highly
> concerned about a new foreclosure, as Chase was not accepting payments.
> Plaintiff tried to generate straight answers that would make it obvious to Chase
> that a new foreclosure would be against USDA guidelines, and that could be used
> with USDA administratively and in any new foreclosure proceeding to prevent a
> foreclosure sale that was against these regulations.

(*Id.* at p. 9, ¶ 16.)  Based on conduct in this case, plaintiff alleges that Defendant was "avoiding

an evaluation of Plaintiff's loan since July 12, 2012 by repeatedly claiming that Plaintiff's loss

mitigations were incomplete." (*Id.* at p. 3, ¶ 8.)

Plaintiff asserts that "[o]n July 12, 2012, Defendant was already on robust notice by way

of a lawsuit filed in the United States District Court for the District of Columbia, in Case No.

1:12-cv-00361-RMC" (hereinafter "National Mortgage Settlement") by the United States and

forty-nine state attorneys general, including the Attorney General of Ohio and the Attorney

General of Colorado, of "problems with avoiding loss mitigation."[1] Specifically, Plaintiff asserts

that Chase was on "the most robust notice of the problems with its system by the time 12 U.S.C.

§ 2605k became effective in January of 2014." (*Id.* at p. 7, ¶11.)

On March 5, 2014, Plaintiff sent to Chase at "an address maintained after the regulations

to 12 USC 2605k became effective, a letter asking about failed loss mitigation efforts." (*Id.* at p.

7, ¶ 13.)  Pertinent parts of the letter include the following:

---

[1] Chase was a defendant in that case, and is a party to the National Mortgage Settlement that
resolved the case.  According to the website, the settlement is "the largest consumer financial
protection settlement in U.S. history."  *See* www.nationalmortgagesettlement.com.

I am writing to dispute your servicing of my mortgage. Please consider this letter a 'qualified written request' under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e). Also please consider this a request under 12 U.S.C. § 2605(k) including all of the duties of the CFPB incorporated by 12 U.S.C. § 2605(k)(1)(E) including but not limited to 12 C.F.R. § 1024.35.[2]

\*\*\*

3.       I am re-applying [for a loan modification] now; how will Chase consider the fact that I was not properly considered before and Chase has refused my payments for a long time. How will Chase handle the arrearage since I was not allowed to make payments for so long. All I seem to get is more requests and lost documents; for years. It seems as if Chase claims lost documents until the arrearage gets big due to interest and fees then is setting me up to claim I do not qualify under standards that fail to consider servicer fault. How does Chase plan to account for this?

(ECF No. 30-1, pp. 1, 4, Exh. A.) Plaintiff asserts that "Chase failed to send any meaningful or plausibly compliant response, only directing Plaintiffs [sic] to its counsel in Denver." (Compl., ECF No. 30, at p. 8, ¶ 14.)[3] Plaintiff asserts that he "again searched the internet for a Chase QWR address, and found a specific QWR address on another website maintained by Chase (but not found on the initial site)." (*Id.*) Plaintiff asserts that

"[a]s such, Defendant violated and [sic] 12 CFR 2605k by maintaining a website in violation of 12 CFR 1024.35c, which states, *inter alia*, as follows: 'A servicer that designates an address for receipt of notices of error must post the designated address on any Web site maintained by the servicer if the Web site lists any contact address for the servicer.' Defendant violated [sic] by maintaining at the time of Plaintiff's letter to that address, and by continuing to maintain to this day,

---

[2] 12 C.F.R. § 1024.35 governs error resolution procedures. Section 1024.35(a) states that a "servicer shall comply with the requirements of this section for *any written notice* from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." (*emphasis added*). "A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request." The regulation defines the scope of error resolution at section 1024.35(b)(7) to include "[f]ailure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39." Finally, the term "error" applies to "[a]ny other error relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35 (b)(11).
[3] There are two paragraphs numbered 14 on page 8 of the Complaint. For ease of discussion, the allegations in these paragraphs are referred to as one combined paragraph 14.

a website at https://www.chase.com/mortgage/contact-chase-mortgage containing a contact address without the designated QWR address.

(*Id*.) Upon finding the specific QWR address on this other website, Plaintiff sent "basically the same letter as the March 5, 2014 letter but marked "REPEAT REQUEST", a copy of which is attached as (Exhibit B)." (*Id*. at pp. 8-9.) Plaintiff asserts that "Chase failed to respond in any meaningful manner and lied in its response." (*Id*. at p. 9.) However, Plaintiff did receive a response to his June 26, 2014 letter by Chase's counsel, dated September 5, 2014. (ECF No. 30-3, Exh. C).

In the letter, Chase's counsel confirmed that Chase denied at least six of Plaintiff's loan modification applications in a three year period, and that at least two of denials occurred since July 12, 2012. (ECF No. 30-3, Ehx. C.) According to the September 5, 2014 letter from Chase's counsel, the two denials in April and August, 2013, respectively, were based on a lack of certain documents, or the fact that some of the documents in the pending application "had become outdated":

> In or around April 2013, Mr. Cole's Loan modification application was denied because Chase had not received from him all of the documents Chase requested to complete his application and the documents Chase did receive had become outdated. Accordingly, Mr. Cole's Loan modification was denied because it was incomplete.
>
> In or around August 2013, Mr. Cole's Loan modification application was denied because the application was not complete. For example, Chase did not receive from Mr. Cole the required monthly living expenses spreadsheet.
>
> As a result of the foregoing, Chase has determined that no error occurred with respect to its review and denial of Mr. Cole's prior Loan modification applications.

(*Id*., at p. 2.) This September 5, 2014 letter from Counsel additionally states that "Mr. Cole has a Loan modification application under review. Chase will contact him after it receives all of the documentation and information relating to his pending modification application and after Chase

is able to make a determination of his eligibility for a modification." (*Id.*) [4]  Plaintiff asserts that "[u]nsurprisingly, Chase continued to invent claims that his packets were incomplete for reasons, some of which were entirely absurd, such as an 'illegible' paycheck stub that can be read on any smartphone." (*Id.* at p. 10, ¶17c.)

Plaintiff asserts that he suffered damages.  As a result of "Defendant's evasive response after trying to get the truth and straight answers from Chase since July 12, 2012 and his knowledge of Chase's nationwide loss mitigation misconduct, Plaintiff suffered severe emotional distress." (*Id.* at p. 11, ¶18.)  Additionally, "[a]s a direct result of Chase maintaining a website that misdirected Plaintiff, he incurred mailing costs and attorney time in re-sending his letter to the designated QWR address from another website maintained by Chase . . . ." (*Id.* at p. 13, ¶19.)

**B.  Procedural History**

On February 25, 2016, Defendant filed the Motion to Dismiss currently pending before the Court. (ECF No. 31.)  Defendant alleges that Plaintiff's RESPA claims are barred because "the letters Plaintiff sent to Chase are not qualified written requests ("QWRs") under RESPA because they do not concern the servicing of Plaintiff's defaulted mortgage loan.  Instead, his letters center on his unsuccessful attempts to modify his defaulted mortgage loan." (ECF No. 31, at p. 1.)  Additionally, Chase asserts that it is not liable under RESPA for failing to disclose its

---

[4] The letter confirms that Chase

> "is the current holder of the Loan's promissory Note and beneficiary of the Loan's recorded Deed of Trust.  Further, and in response to Mr. Cole's questions regarding the U.S. Department of Agriculture (the "USDA"), the USDA issued a Loan Note Guarantee in connection with the Loan.  Moreover, in the Letter Mr. Cole alleges that Chase has refused his Loan payments.  Chase, however, has no record of any rejected or returned payments made by Mr. Cole."

(ECF No. 30-3, Ehx. C, at p. 3.)

designated QWR address in all websites. It asserts that Chase notified Plaintiff in a letter of its designated QWR address, and that it provided the address "in a website freely available to Plaintiff." (*Id.*, at p. 4.) Plaintiff opposes Defendant's Motion. (ECF No. 34.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleas factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. "All of the well-pleaded allegations of the complaint must be treated as true, though we need not accept Plaintiff's legal conclusions or draw unwarranted factual inferences." *Thomas v. Publishers Clearing House, Inc.*, 29 F.App'x 319, 322 (6th Cir. 2002). The Court "need not, however, accept conclusory allegations or conclusions of law dressed up as facts." *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012).

In ruling on a motion to dismiss, the court may consider written instruments that are exhibits to a pleading, as those are considered part of the pleading for all purposes. *Campbell v. Nationstar Mortg.*, No. 14-1751, 611 Fed. App'x 288, 291-92, 2015 WL 2084023, at *3 (6th Cir. May 6, 2015) (citing Fed.R.Civ.P. 10(c)). A court may also consider "documents incorporated

into the complaint by reference, and matters of which a court may take judicial notice." *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)).

### III.    ANALYSIS

### A.  Web Address Claim

Plaintiff asserts in Paragraph 14 of the Complaint that Chase "violated and [sic] 12 U.S.C. § 2605k by maintaining a website in violation of 12 CFR 1024.35c." (Compl., ECF No. 30, at p. 8, ¶ 14.)  Specifically, Plaintiff claims that:

> "Defendant violated, at the time of Plaintiff's letter to that address, and by continuing to maintain to this day, a website at https://www.chase.com/mortgage/contact-chase-mortgage containing a contact address without the designated QWR address. That website listed "Attn: Customer Service Research Mail Code:  OH4-7302, P.O. Box 24696, Columbus, OH 43224-0696."

(*Id.*)

Plaintiff pleads on information and belief, based on another Chase website, that the designated address is "PO Box 183166, Columbus, OH 43218-3166."   Plaintiff further asserts that, because "this website is public and has been maintained for well over a year, [sic] constitutes a pattern or practice of noncompliance with the requirements of 12 USC 2605k and Plaintiff is entitled to statutory damages in an amount not to exceed $2,000." (*Id.*)

Defendant asserts that Plaintiff's claims in Paragraph 14 are "erroneous" and "Plaintiff's contention that Chase is somehow liable under RESPA for not identifying its designated QWR address in writing and in its website fails as a matter of law."  (ECF No. 31, at p. 14.) Defendant does not contend that Plaintiff is incorrect in his claim that Chase failed to provide this designated address on all of its websites.  Rather, Defendant contends that it provided its correct address for Notices of Error, Information Requests, or Qualified Written Requests in a

December 2013 letter to Plaintiff. Chase further contends that its designated QWR address "is available at *a* Chase website" (*emphasis added*) and thus it "complied with 12 C.F.R. § 1024.35(c) and Plaintiff's arguments to the contrary are not only erroneous, they are completely disingenuous." (ECF No. 31, at p. 14.)

Plaintiff asserts that "[t]he Dodd Frank amendments to RESPA include 12 U.S.C. § 2605k" which states, in part:

> **(k) Servicer Prohibitions**
> **(1) In General.**  A servicer of a federally related mortgage shall not –
>
> \*\*\*
>
> **(E)** fail to comply with *any other obligation found by the Bureau of Consumer Financial Protection, by regulation,* to be appropriate to carry out the consumer protection purposes of this chapter. (emphasis added).

12 U.S.C. § 2605(k)(1)(E).

Further, section 1024.35 of the regulation specifically addresses error resolution procedures applicable to mortgage servicers. Subsection (c) of the regulation provides as follows:

> **(c) Contact information for borrowers to assert errors.**  A servicer may, by written notice provided to a borrower, establish an address that a borrower must use to submit a notice of error in accordance with the procedures in this section. The notice shall include a statement that the borrower must use the established address to assert an error. If a servicer designates a specific address for receiving notices of error, the servicer shall designate the same address for receiving information requests pursuant to § 1024.36(b). A servicer shall provide a written notice to a borrower before any change in the address used for receiving a notice of error. *A servicer that designates an address for receipt of notices of error must post the designated address on any Web site maintained by the servicer if the Web site lists any contact address for the servicer. (emphasis added).*

12 C.F.R. § 1024.35(c). An analysis of the final sentence of the regulation does not support Defendant's construction. The word "any," as used in the regulation, is unambiguous. A plain reading of 12 C.F.R. § 1024.35(c) supports Plaintiff's contention, and thus Plaintiff's allegation

is sufficiently plausible to state a claim for relief. *See United States v. Winson*, 793 F.2d 754 (6th Cir.1986) (even under the strict construction accorded to criminal statutes, the words "any court," as used in 18 U.S.C. § 922(h)(1), are "patently unambiguous" and do not exclude foreign courts).

### B. Plaintiff's Letters Under RESPA

In its Motion to Dismiss, Chase asserts that "Plaintiff's Letters are not QWRs under RESPA, Chase had not [sic] duty to respond to his letters under RESPA, and, even if his Letters constituted QWR's, Chase adequately responded to Plaintiff." (ECF No. 31, at p. 7.) In support of its argument, Chase states that

> "[u]nder 12 U.S.C. § 2605(e)(1)(A), a loan servicer has a duty to respond to a QWR that concerns 'information relating to the *servicing* of [the] loan.'" 12 U.S.C. § 2605(e)(1)(A) (emphasis added); *Smallwood v. Bank of America, N.A.*, No. 1:15-cv-336, 2015 WL 7736876, at *6 (S.D. Ohio Dec. 1, 2015) (acknowledging that RESPA's response duty under 12 U.S.C. (e)(1)(A) is only triggered when the QWR relates to loan servicing) (appeal pending).[5] Loan "servicing" is defined under RESPA as 'receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan' and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.' 12 U.S.C. § 2605(i)(3); *Smallwood*, 2015 WL 7736876, at *6 (discussing the definition of 'servicing' under RESPA)."

(ECF No. 31, at p. 8.)

Additionally, Chase asserts that

> "It is well-established that '[l]oan modification requests do not qualify as QWRs because they do not relate to the loan's servicing.' *Martini v. JPMorgan Chase Bank, N.A.*, No. 15-1423, 2015 WL 8479633, at *5 (6th Cir Dec. 10, 2015) (holding that plaintiffs' letters concerning loan modification 'do not demand that Chase meet RESPA's procedural requirements.') (citing 12 U.S.C. § 2605(e)(1)(A) and *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 (9th Cir. 2012) (declining to find that plaintiffs' letters qualified as QWRs because they demanded changes to the loan terms and not the loan's servicing); *Smallwood*, 2015 WL 7736876, at *8 (holding that plaintiffs' letters regarding loan modification did not trigger an obligation to respond under RESPA)."

---

[5] Plaintiff avers that *Smallwood* was ultimately settled while on appeal. (ECF No. 34, at p. 2.)

(*Id.*)

There are several considerations that must be discussed in addressing Chase's arguments. The Sixth Circuit has made it clear that, as a "remedial statute, RESPA is construed broadly to effectuate its purposes." *Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 985-86, n. 5 (6th Cir. 2009). This Court has noted that Congress has continued to expand the protections of RESPA.

> "Dodd-Frank, which was signed into law on July 21, 2010, made a number of changes to RESPA and regulations promulgated since then have further changed the law. Dodd-Frank Wall Street Reform & Consumer Protection Act, Pub. Law No. 111-203, § 1463; 124 Stat. 1376, 2184 (2010); *see also, e.g.*, 12 C.F.R. §§ 1024.35-1024.36 (2014). However, regulation based upon Dodd-Frank occurred after the events in this case and § 1400(c) of Dodd-Frank delayed the effective date of Title XIV of the Act. Dodd-Frank, Pub. Law No. 111-203, § 1400(c); 124 Stat. 1376, 2136. Thus, the Dodd-Frank changes and resulting regulations are not relevant to this case."

*Marais v. Chase Home Finance, LLC*, 24 F.Supp.3d 712, 719, n. 5 (S.D. Ohio 2014).

Chase's reliance on *Martini* and *Smallwood* is correct for the proposition that courts have held that requests for loan modifications do not qualify as QWRs because they do not relate to the loan's servicing. However, Chase does not address the fact that in both *Martini* and *Smallwood*, the conduct at issue, like the conduct in *Marais*, occurred prior to the effective date of the new regulatory regime put in place under Regulation X. In *Martini v. JP Morgan Chase Bank, N.A.*, 634 Fed.App'x. 159, 160-61 (6th Cir. 2015), the Sixth Circuit opinion addressed letters and a foreclosure sale that occurred in 2011, several years before the effective date of Regulation X. In *Smallwood v. Bank of America, N.A.*, No. 1:15-cv-336, 2015 WL 7736876, at *7, fn. 12 (S.D. Ohio Dec. 1, 2015), the Court specifically called attention to the inapplicability of the new regulatory regime in that case, noting that "Plaintiffs ignore the issue that their loan modification application, denial of the application, and September 2013 letter to Defendant all

occurred prior to Regulation X's effective date." Similarly, the Ninth Circuit opinion Defendant relies upon, *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667 (9th Cir. 2012), was also decided prior to the effective date of Regulation X. Thus, these cases do not address claims brought under Regulation X.

Unlike the claims in the cases cited above, in the case *sub judice*, Plaintiff asserts that his claims arise under 12 U.S.C. § 2605(k), part of the Dodd-Frank amendments to RESPA, and the implementing regulations. These regulations, the Mortgage Servicing Rules under the Real Estate Settlement Procedures Act (Regulation X), were promulgated by the Consumer Financial Protection Bureau (CFPB), and became effective on January 10, 2014. 78 FR 10690-01 (February 14, 2013) (codified at 12 C.F.R. pt. 1024). Under these regulations, a borrower may enforce the provisions of 12 C.F.R. § 1024.41 (loss mitigation procedures) pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f)).

Plaintiff asserts that the CFPB's regulations were in effect at the time Plaintiff sent to Chase the letters at issue in this case. The CFPB's regulations provide new rules to address error resolution (12 C.F.R. § 1024.35) and requests for information (12 C.F.R. § 1024.36), and those provisions specifically refer to qualified written requests as one form of a notice of error or request for information.

Servicers' obligations regarding a "Notice of error" are governed by 12 C.F.R. § 1024.35(a), which defines QWRs in this manner: "[a] qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with the requirements applicable to a notice of error with respect to such qualified written request." This subsection defines a notice of error to encompass any written notice from the borrower that includes:

(1) The name of the borrower,

(2) Information that enables the mortgage servicer to identify the borrower's mortgage loan account, and

(3) Assert[s] the error the borrower believes has occurred with respect to the borrower's mortgage loan.

Similarly, 12 C.F.R. § 1024.36(a) governs "Requests for Information," and defines QWRs in this manner: "[a] qualified written request that requests information relating to the servicing of a mortgage loan is a request for information for purposes of this section, and a servicer must comply with the requirements applicable to a request for information with respect to such qualified written request." This subsection defines a request for information to encompass any written notice from the borrower that includes:

(1) The name of the borrower,

(2) Information that enables the mortgage servicer to identify the borrower's mortgage loan account, and

(3) States the information the borrower is requesting with respect to the borrower's mortgage loan.

The Court takes judicial notice that the CFPB has issued Official Interpretations to assist servicers in applying the new rules.[6] In its Official Interpretation of the rule, the CFPB admonishes mortgage servicers not to rely solely on the borrower's description of a submission to determine whether it constitutes a "Notice of Error" (§ 1024.35), an "Information Request" (§ 1024.36), or both. Additionally, the CFPB's Official Interpretation specifically addresses Qualified Written Requests, and states:

---

[6] Deference under *Chevron v. Natural Resources Defense Council* comes into play only when an agency offers a binding interpretation of a statute that it administers. 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Sixth Circuit has noted that agency interpretations that do not receive *Chevron* deference may still be "entitled to respect" under the standards set forth in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), which entitles an agency's position to weight in proportion to its persuasiveness. *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 727 (6th Cir. 2013).

*Qualified Written Request*

1. A qualified written request is a written notice a borrower provides to request a servicer either correct an error relating to the servicing of a mortgage loan or to request information relating to the servicing of the mortgage loan. A qualified written request is not required to include both types of requests. For example, a qualified written request may request information relating to the servicing of a mortgage loan but not assert that an error relating to the servicing of a loan has occurred.

2. A qualified written request is *just one form* that a written notice of error or information request may take. *Thus, the error resolution and information request requirements in §§1024.35 and 1024.36 apply as set forth in those sections irrespective of whether the servicer receives a qualified written request.(emphasis added.)*

*See* http://files.consumerfinance.gov/f/201301_cfpb_final-rule_servicing-respa-interpretations.pdf at pp. 4-5.

Of import to this case is the fact that the scope of error resolution is defined in the regulation as follows, in pertinent part:

**(b) Scope of error resolution.** For purposes of this section, the term "error" refers to the following categories of covered errors:

***

**(7)** Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39.

***

**(10)** Moving for foreclosure judgment or order of sale, or conducting foreclosure sale in violation of 1024.41(g) or (j).

12 C.F.R. § 1024.35(b)(7) and (b)(10).

In its Official Interpretation of the rule, the CFPB addresses a servicer's obligation relating to loss mitigation options as provided in 12 C.F.R. § 1024.41, and specifically addresses the requirement that a servicer diligently attempt to collect the information needed to complete a loss mitigation application, as follows:

4. *Diligence requirements.* Although a servicer has flexibility to establish its own requirements regarding the documents and information necessary for a loss

14

mitigation application, the servicer must act with reasonable diligence to collect information needed to complete the application. Further, a servicer must request information necessary to make a loss mitigation application complete promptly after receiving the loss mitigation application. Reasonable diligence includes, without limitation, the following actions:

\*\*\*

A servicer requires additional information from the applicant, such as an address or a telephone number to verify employment; the servicer contacts the applicant promptly to obtain such information after receiving a loss mitigation application.

\*\*\*

5. *Information not in the borrower's control.* A loss mitigation application is complete when a borrower provides all information required from the borrower notwithstanding that additional information may be required by a servicer that is not in the control of the borrower. For example, if a servicer requires a consumer report for a loss mitigation evaluation, a loss mitigation application is considered complete if a borrower has submitted all information required from the borrower without regard to whether a servicer has obtained a consumer report that a servicer has requested from a consumer reporting agency.

*See* http://files.consumerfinance.gov/f/201301_cfpb_final-rule_servicing-respa-interpretations.pdf at pp. 38-39.

Unlike the Plaintiff in *Smallwood*, in the case *sub judice*, Plaintiff is not contesting a denial of a loan modification application. He is asserting that his loan modification applications are not receiving consideration. The *Smallwood* Plaintiffs asserted that "their account is in error because it was improperly underwritten for a loan modification under the Fannie Mae Modification Program and/or the Home Affordable Modification Program. ("HAMP")," *Smallwood*, 2015 WL 7736876, at \*3. In that case, the Defendant, Bank of America, explained that the Smallwoods' income "would not support modification," and provided Plaintiffs with a list of information that it considers in evaluating a loan modification. *Id*. at \*4. In the case *sub judice*, Plaintiff is not alleging that his loan modification application was improperly denied. Rather, he alleges that Chase is not complying with the provisions of 12 U.S.C. § 2605(k):

**(k) Servicer Prohibitions**
**(1)In General.** A servicer of a federally related mortgage shall not –

\*\*\*

**(C)** fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, *or avoiding foreclosure, or other standard servicer's duties*.

\*\*\*

**(E)** fail to comply with *any other obligation found by the Bureau of Consumer Financial Protection, by regulation,* to be appropriate to carry out the consumer protection purposes of this chapter. (*emphasis added*).

(ECF No. 34, at p. 13.)

Plaintiff asserts that his letters were sent in relation to avoiding foreclosure, and that Chase "was avoiding an evaluation of Plaintiff's loan since July 12, 2012 by repeatedly claiming that Plaintiff's loss mitigations were incomplete." (Compl., ECF No. 30, at p. 3, ¶ 8.)

Plaintiff asserts that concerns about servicer conduct in evaluating loss mitigation applications, particularly in circumstances where a foreclosure action had already been initiated, were an issue in the "National Mortgage Settlement," and that this concern is embodied in the new regulatory scheme as set forth in 12 C.F.R. § 1024.41. Specifically, the regulation creates a duty for the servicer to "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41 (b)(1).

A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. At this stage of the proceedings, Plaintiff has provided sufficient factual allegations, taken as true, to state a plausible claim. Determination of whether evidence supports these claims will have to wait until summary judgment or trial. Defendant's Motion to Dismiss is **DENIED**.

## IV. MOTION TO TRANSFER VENUE

Section 1404(a) provides as follows: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought . . . ." 28 U.S.C. § 1404(a). Thus, the threshold consideration is whether the action could have been brought in the transferee court. *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007). If so, "the issue becomes whether transfer is justified under the balance of the language of § 1404." *Id.*

"The moving party bears the burden of showing the need to transfer venue." *Slate Rock Const. Co. Ltd. v. Admiral Ins. Co.*, 2:10-CV-1031, 2011 WL 3841691, at *5 (S.D. Ohio Aug. 30, 2011) (citing *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp.2d 941, 945 (S.D. Ohio 2002)). The moving party must demonstrate that the proposed transferee court is "a *more* convenient forum, not [simply] a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964); *see also Shanechain v. Macy's, Inc.*, 251 F.R.D. 287, 292 (S.D. Ohio 2008) ("[Section] 1404 does not allow . . . for transfer if that transfer would only shift the inconvenience from one party to another.").

A district court deciding a § 1404(a) motion "has broad discretion to grant or deny" the requested transfer. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). Courts generally consider a variety of private and public factors when considering a motion to transfer to a more convenient forum. *See Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 n.1 (6th Cir. 2006). The Court considers the following interests of the litigants:

> "[P]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses–but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."

*Slate Rock Construction*, 2011 WL 3841691 (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995)). The Court also considers the following interests of the public:

17

"[T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases."

*Id.*

The Court takes judicial notice of REPSA's venue provision, which provides that any action pursuant to the provisions of 12 U.S.C. § 2605 may be brought in the United States district court for the district in which the property is located, or where the violation is alleged to have occurred. 12 U.S.C. § 2614. Plaintiff alleges that the violation occurred in Ohio. However, Plaintiff does not dispute that the District of Colorado is also a proper venue for this action. Thus, the Court must consider and weigh the various private and public factors. For the reasons set forth below, the Court concludes that the balance of the relevant factors weigh against transfer.

## A. Private Factors

Plaintiff's choice to litigate in the state of Ohio is generally entitled to substantial deference. *See Jamhour*, 211 F.Supp.2d at 946–47 (quoting *Hanning v. New England Mut. Life Ins. Co.*, 710 F. Supp. 213, 214 (S.D. Ohio 1989) ("'The plaintiff's choice of forum is to be given considerable weight . . . .'")); *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951) ("[U]nless the balance [of the factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

The locus of operative facts in this case weighs against transfer. Plaintiff's surviving claim alleges that Chase violated RESPA through, among other things, Chase's policies, procedures, and the posting of Web addresses in Ohio that do not comply with the regulations implementing RESPA. Chase disputes Plaintiff's interpretation of RESPA and its regulatory

scheme as applied to his claim.    Thus, the facts giving rise to this dispute, which involves the interpretation of the amendments to RESPA and whether Chase's policies and practices complied with the recently implemented regulations, occurred primarily in Ohio, where the Plaintiff's letters were directed to be filed.

The Court finds instructive the analyses in the following cases. *See, e.g.*, *Cent. States, SE & SW Areas Health & Welfare Fund v. Guarantee Trust Life Ins. Co.*, 8 F.Supp.2d 1008, 1011 (N.D. Ohio 1998) (finding that the location where the defendant denied the coverage is the locus of the controversy); *St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp.*, No. 05 C 5484, 2006 WL 1543275, at *3 (N.D. Ill. June 1, 2006) (gathering cases concluding that the locus of operative facts in an insurance coverage dispute is not where the underlying accident or litigation is proceeding, but instead where the contract was negotiated, given that the pivotal issue is the interpretation of the insurance policy); *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 395, 405 (S.D.N.Y. 2005) (noting that the court considers "where the insurance contract was made" in making a determination of "the locus of operative facts in a declaratory judgment action concerning the interpretation of an insurance policy contract"); *see also Travelers Prop. Cas. Co. v. Hillerich & Bradsby, Co., Inc.*, No. 05-71497, 2005 WL 2206161, at *3 (E.D. Mich. Sept. 12, 2005) (transferring insurance coverage dispute action out of the district where the underlying litigation arose to the district where the policies were negotiated, purchased, and issued, explaining that the events in the underlying litigation are contained in the record, which merely required a paper review and that it was not clear whether testimony of the parties in the underlying litigation would be relevant to the coverage issue).

The convenience to the parties also weighs against transfer.    Ohio is presumably convenient to Chase, given that it is a principal place of business.    The convenience to the

witnesses is a neutral factor or weighs slightly against transfer.  Because the primary dispute is one of Chase's policies, procedures, and handling of Plaintiff's requests for information at its Columbus, Ohio, addresses, to the extent witnesses are required to resolve the dispute, Chase's witnesses will likely reside in Ohio.  The convenience of non-party witnesses, however, "is more important than the convenience of party witnesses on either side."  *Cincinnati Ins. Co. v. O'Leary Paint Co., Inc.,* 676 F.Supp.2d 623, 635 (W.D. Mich. 2009).  In its Motion to Transfer Venue, Chase does not identify any non-party witnesses whom it intends to call, noting only that "many of the witnesses having information relating to Plaintiff's claims are located in Colorado." (ECF No. 20, at 11.)   Plaintiff notes that, in any event, any Colorado witnesses would be in the Grand Junction area, "about 250 miles from the Denver courthouse" and thus also not within the 100 mile subpoena limits of Fed. R. Civ. P. 45.  (ECF No. 16, at 12-13.)

Chase, as a moving party, must do more than simply state that it has a right to seek discovery of non-party witnesses who do not reside in Ohio. *See Slate Rock Const. Co. v. Admiral Insurance*, 2:10-cv-1030, 2011 WL 3841691 at *9 (S.D. Ohio Aug. 30, 2011) ("[A] generalized assertion by a defendant that witnesses reside in . . . the proposed transferee district is generally insufficient to support a change of venue.").  Rather, the moving party "must show . . . that witnesses (usually third-party witnesses rather than employees of the defendants) are unwilling to attend a trial in that forum.  *Id.*; *see also Pearle Vision, Inc. v. N.J. Eyes, Inc.*, No. 1:08-cv-190, 2009 WL 73727, at *9 (S.D. Ohio Jan. 6, 2009) (noting, in conducting a § 1404(a) analysis, that the defendants "have [not] offered any evidence that their witnesses would be unable or unwilling to provide testimony at a trial in this district"); *Armco, Inc. v. Reliance Nat. Ins. Co.*, No. C-1-96-1149, 1997 WL 311474, at *5 (S.D. Ohio May 30, 1997) ("[T]he Defendant

has not indicated that witnesses would be unwilling to attend and offer testimony.  . . .  [T]he Defendant must submit evidence indicating that their witnesses have refused to attend trial in the Southern District."); *Shore to Shore Prop., LLC v. Allied World Ass.*, No. C 11-01512, 2011 WL 4344177, at *3 (N.D. Cal. Sept. 15, 2011) (internal quotation marks and citation omitted) (noting that the party seeking a convenience transfer "is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include"); *cf. Jamhour*, 211 F. Supp. 2d at 947 (specifically identifying witnesses and their expected testimony, enabling the court to weigh the significance of the location of each witness).  Chase has made no such showing.

Furthermore, Plaintiff has proffered that Mrs. Fischer-Drazic, the person who prepared Plaintiff's loss mitigation packets and "assisted in countless supplements requested by Chase" "would agree to submit to this Court's jurisdiction for subpoena purposes, if necessary."  (ECF No. 26, at 12-13.)  The Court declines to accord weight to the convenience of unidentified non-party witnesses Chase *may* call who *may or may not* reside in Colorado and whose testimony is of unknown relevance to whether Chase complied with its regulatory obligations under RESPA.[7]

B. **Public Factors**

The cases upon which Chase relies in support of its argument that the locus of the operative facts is in Colorado, *Kay v. National City Mortg. Co.*, 494 F. Supp. 2d 845, 945 (S.D. Ohio 2007), and *In re Aredia and Zometa Prouducts Liability Litigation*, No. 3:06-MD-1760, 2008 WL 686213, at *3 (M.D. Tenn. Mar. 6, 2008), are distinguishable.  In those cases, in

---

[7] Even if Chase had made such a showing, the Court notes that it could utilize the compulsory process of the District of Colorado to obtain deposition testimony which it could use at trial in Ohio.  *See Projects Unlimited, Inc. v. All Tech Elecs., Inc.*, No. 3:09-cv-284, 2010 WL 299156, at *8 (S.D. Ohio Jan. 21, 2010) ("While [the defendant] asserts compulsory process available to obtain witness testimony only in New York, the same compulsory process can be used to obtain deposition testimony from those witnesses in New York which can be used at trial in Ohio.").

contrast to the instant action, the primary issue was not one of whether business policies and practices were in compliance with federal law and regulations.  For example, *Kay* involved a class-action lawsuit, and the Court found that the determination of counterclaims under South Carolina state law weighed in favor of the transfer to South Carolina.  Additionally, in *Kay*, the Court determined that National City's policies and practices in general were not at issue.  Similarly, in *Aredia*, each of Plaintiff's claims involved state law claims and related defenses, such that the application of the law of each Plaintiff's home state weighed in favor of transfer.  In the case *sub judice*, only the federal claim remains at issue.

Plaintiff asserts that Ohio has a greater interest than Colorado in resolving this RESPA dispute, inasmuch as this dispute requires the Court to apply federal law and interpret federal regulations, where the cause of action at issue arose in Ohio, and involved the business policies and practices of an Ohio corporate office.  Furthermore, because this action arises under RESPA, a federal statute, both courts are equally familiar with the controlling law and each would be competent to adjudicate that claim.  *See Kay,* 494 F. Supp. 2d 857.

Finally, although the conservation of judicial resources slightly favors transfer, this factor does not overcome the other factors weighing against transfer.  As Chase points out, the docket of the Colorado district is less "congested," in that the "U.S. District Courts – Judicial Caseload Profile for this Court and the Colorado Federal Court" show that the "Colorado Federal Court's Docket is less congested than this Court's."  (ECF No. 20, at 9.)  Defendant highlighted that Colorado is 2.5 months faster on average.  Although the conservation of judicial resources slightly favors transfer, this factor does not overcome the other factors weighing against transfer.

In sum, Chase has failed to meet its burden to demonstrate that the District of Colorado is a more convenient forum.  Rather, the Court concludes that the balance of the private and public factors weigh against transfer.  Chase's Motion to Transfer Venue is, therefore, **DENIED.**

## V.     CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 31) and Motion to Transfer Venue (ECF No. 14) are **DENIED**.  Plaintiff's Motions to File Surreplies (ECF No. 22, ECF No. 36) are **DENIED.**


**IT IS SO ORDERED.**


_8 - 25 - 2016_
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**

23